IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-204-D-2

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TRAVIS BROCK BYRD, ) | |
| ) | |
| Defendant. ) | |

Travis Brock Byrd ("Byrd" or "defendant") is a notorious drug dealer and recidivist. Byrd returns to court with his second motion for compassionate release. On August 21, 2020, the court entered a comprehensive order denying Byrd's original motion for compassionate release. See [D.E. 487]. On July 1, 2021, the United States Court of Appeals for the Fourth Circuit affirmed. See United States v. Byrd, 851 F. App'x 406 (4th Cir. 2021) (per curiam) (unpublished). On January 25, 2022, Byrd again moved for compassionate release. See [D.E. 521]. On March 28, 2022, the United States responded in opposition. See [D.E. 536]. Byrd's arguments have not improved since his first request. As explained below, the court denies Byrd's motion for compassionate release.

I.

In 2007, Byrd pleaded guilty to conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, 50 grams or more of cocaine base (crack), and 100 kilograms of marijuana for his participation in a three-year drug trafficking conspiracy. See PSR [D.E. 263] ¶ 61. Byrd was accountable for conspiring with at least five other individuals to distribute 4.08 kilograms of cocaine base (crack), 18.29 kilograms of cocaine, and 272.16 kilograms of marijuana and he routinely carried a firearm during his drug trafficking activities. See id. On July

10, 2007, the court sentenced Byrd to 210 months' imprisonment. See id.

After Byrd was released from federal prison and while on federal supervised release for his 2007 federal conviction, Byrd again engaged in extensive drug trafficking. See PSR ¶¶ 56, 61. On October 23, 2018, Byrd pleaded guilty to conspiring to distribute and possess with intent to distribute 5 kilograms or more of cocaine (count one) and possession with intent to distribute 500 grams or more of cocaine (count ten). See [D.E. 172]. On July 15, 2019, the court sentenced Byrd to 156 months' imprisonment for the 2018 conviction. See [D.E. 415, 416]. That same say, due to his 2018 federal conviction in this court, the court revoked Byrd's supervised release for his 2007 federal conviction. The court sentenced Byrd to 60 months' consecutive imprisonment for his violation of federal supervised release. See Order/J. Revocation of Supervised Release at 1, United States v. Byrd, No. 5:06-cr-00298-D-1 (E.D.N.C. July 15, 2019), [D.E. 89]. Byrd did not appeal his 156-month sentence. Byrd appealed his 60-month revocation sentence and the Fourth Circuit affirmed. See United States v. Byrd, 814 F. App'x 772 (4th Cir. 2020) (per curiam) (unpublished).

## II.

On December 21, 2018, the First Step Act took effect. See First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5249 (2018). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate

2

"extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission ("Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

     (ii) The defendant is—

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation

---

>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (quotation omitted). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., United States v. Hargrove, 30 F.4th 189, 194–95, 198–200 (4th Cir. 2022); McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

The United States does not contend that Byrd has failed to meet the exhaustion requirement. Thus, the court addresses the merits. See United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021).

Byrd's second motion for compassionate release alleges that he needs to care for his "very

5

ill mother." [D.E. 521] 1. On February 19, 2022, Byrd's counsel filed a memorandum of law in support and mentioned the risk arising from COVID-19 and Byrd's pulmonary embolism. See [D.E. 525] 4. Byrd's counsel also mentioned Byrd's "terminally ill mother and Byrd's desire to assist with her care and spend her last days with her." Id. at 7. Neither Byrd nor his counsel submitted any evidence about Byrd's mother.

On March 28, 2022, the United States responded in opposition. See [D.E. 536]. The United States noted the procedural history of the case, that Byrd is fully vaccinated against COVID-19, and that Byrd's medical conditions are well controlled. See id. at 4. As for Byrd's mother, the United States noted that the BOP policy statement about family circumstances does not apply to parents, and the absence of evidence that Byrd is the only available caretaker for his mother. See id. at 25. Finally, the United States persuasively discussed the factors under section 3553(a) factors and argued that Byrd should not be released. See id. at 26–27. As part of that discussion, the United States detailed Byrd's eight disciplinary infractions while federally incarcerated. See id. at 26.

Byrd is 40 years old and has a pulmonary embolism. Byrd argues that this condition puts him at heightened risk of serious infection from COVID-19. See [D.E. 521] 1–2; [D.E. 525] 4–8. Byrd, however, has been vaccinated against COVID-19 since his last compassionate release motion, is fully ambulatory, and engages in all normal activities of daily living. See [D.E. 536] 4. Byrd's vaccination provides him protection against the risks from COVID-19. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-

6

10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 2022 WL 1611819 (U.S. May 23, 2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Byrd from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Therefore, reducing Byrd's sentence because of his risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A). Nonetheless, the court assumes without deciding that Byrd's health conditions constitute an extraordinary and compelling reason under application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for Byrd's desire to assist with his terminally ill mother's care, the "family circumstances" policy statement does not apply to incapacitation of a defendant's parent. Nonetheless, the court considers Byrd's desire to care for his mother under the "other reasons" policy statement.

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Byrd's medical conditions, his desire to help care for his mother, and his rehabilitation efforts are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Byrd's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

In Byrd's latest federal drug trafficking case, Byrd distributed over 5 kilograms of cocaine, possessed a firearm, and used his residence to sell large quantities of drugs. See PSR [D.E. 263] ¶¶ 20–56. Byrd did so while on federal supervised release. See id. at ¶ 61. Byrd is one of the most committed drug dealers that this court has ever seen. His prompt return to drug trafficking after serving a federal sentence and while on supervised release demonstrates his complete lack of respect for the law.

Byrd claims he has "diligently worked to put his life on the right track since being incarcerated" but does not provide the court with details. See [D.E. 521] 1; [D.E. 525] 7–8. Byrd, however, also has eight infractions, including using drugs or alcohol, possessing a hazardous tool, being insolent to staff, stealing food, allowing another inmate to use his phone account, and refusing to obey an order. See [D.E. 536-1].

8

The court must balance Byrd's rehabilitation efforts with his serious criminal conduct, his terrible criminal history, his poor performance in federal custody, his abysmal performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Byrd's potential exposure to COVID-19, his medical condition, his mother's health, his release plan, and his rehabilitation efforts. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Byrd's arguments, the government's persuasive response, the need to punish Byrd for his serious criminal behavior, to incapacitate Byrd, to promote respect for the law, to deter others, and to protect society, the court denies Byrd's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

### III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 521].

SO ORDERED. This 17 day of June, 2022.

JAMES C. DEVER III
United States District Judge

9

Case 5:18-cr-00204-D    Document 548    Filed 06/17/22    Page 9 of 9